IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ELIZABETH BOWERMAN**, an Individual,
**DEBRA DAVIS**, an Individual,
**TIFFANY FLEISCHER**, an Individual,
**LISA-MARIE HARRIS**, an Individual,
**TIFFANY GOODRICH**, an Individual,
**MATTHEW FIREBAUGH**, an Individual,
**ROBIN BIRD**, an Individual,
**HEIDI NARVER**, an Individual,
**AMY PEACHY (PAYNE)**, an Individual,
**BRENNA RILEY**, an Individual,
**LISA HINDMAN**, an Individual,
**JAY TERRY**, an Individual,
**NOEL KARR**, an Individual,
**CAMILLE COE (VALBERG)**, an Individual,
**LAUREN FULTON**, an Individual,
**STEVEN SHRINER**, an Individual, and
**MARY STEINHOFF**, an Individual,

        Plaintiffs,

        v.

**ST. CHARLES HEALTH SYSTEM, INC.**,
a Corporation,

        Defendant.

Case No. 6:23-cv-01488-MC
OPINION & ORDER

_____

**MCSHANE, District Judge:**

      Plaintiffs bring religious discrimination claims under Title VII of the Civil Rights Act and

Oregon law against their former employer, Defendant St. Charles Health System, Inc. First Am.

Compl. ("FAC"), ECF No. 13. Plaintiffs allege that Defendant unlawfully terminated their

employment when they declined, based on their sincerely held religious beliefs, to be vaccinated against the COVID-19 virus. *Id.* ¶ 68. Defendant now moves to dismiss fifteen of the seventeen plaintiffs from this action.[1] Def.'s Mot. to Dismiss Pls.' First Am. Compl. ("MTD"), ECF No. 17. Because four plaintiffs fail to sufficiently allege a conflict between their religious beliefs and Defendant's vaccine mandate, and because eleven plaintiffs' state and federal claims are time-barred by the applicable statute of limitations, Defendant's Motion is GRANTED.

## BACKGROUND

Defendant St. Charles Health System, Inc. is the operator of a health system based in central Oregon. MTD 5. Plaintiffs are individuals who worked at Defendant's facilities during the onset of the COVID-19 pandemic. FAC ¶ 3. In August 2021, the Oregon Health Authority ("OHA") enacted an administrative rule ("the Mandate") requiring healthcare workers in Oregon to be vaccinated against COVID-19 by a deadline of October 18, 2021. MTD 6. The Mandate allowed for accommodations for religious and medical exemptions, provided they would not pose an undue hardship to an employer's operations. *Id.* at 2; FAC ¶ 3.

Plaintiffs contend that their religious beliefs prevented them from complying with Defendant's Mandate. FAC ¶ 4. All plaintiffs (except for Plaintiff Steinhoff) submitted requests for religious exemptions to the vaccine requirement. *See gen.* FAC ¶¶ 5, 11, 21, 57–59. Defendant approved most of the exemption requests,[2] but rejected Plaintiffs' requested accommodation to continue working unvaccinated. FAC ¶ 61; *see gen.* FAC ¶¶ 6, 11, 21. After Plaintiffs further refused the COVID-19 vaccine, Defendant placed Plaintiffs on unpaid leave before terminating their employment in early 2022. *See* FAC ¶ 11; MTD 9.

---

[1] Defendant does not challenge the claims of Plaintiffs Davis and Harris at this motion to dismiss stage.
[2] Defendant rejected Plaintiff Fleischer's religious exemption request. FAC ¶ 15.

On April 20, 2023, a group of eleven plaintiffs (collectively the "Hindman Plaintiffs" and comprised of Plaintiffs Hindman, Riley, Terry, Peachy (Payne), Bird, Steinhoff, Karr, Coe (Valberg), Fulton, Shriner, and Narver) filed a lawsuit against Defendant in Oregon state court. Gibson Decl., at 256, ECF No. 19. In that case, the Hindman Plaintiffs asserted religious discrimination claims under Oregon state law. *Id*. Defendant moved to dismiss the action, arguing that the Hindman Plaintiffs' claims were time-barred by the relevant statute of limitations. *Id*. at 7. On November 20, 2023—three days before the court was set to hear oral argument on Defendant's motion—the Hindman Plaintiffs voluntarily dismissed their state lawsuit. *Id*. at 274.

Meanwhile, on October 10, 2023, another group of plaintiffs filed this lawsuit against Defendant in federal court. The six plaintiffs (collectively the "Bowerman Plaintiffs" and comprised of Plaintiffs Bowerman, Davis, Fleischer, Harris, Goodrich, and Firebaugh) asserted religious discrimination claims under both Title VII and Oregon state law. Compl., ¶¶ 27, 33, ECF No. 1. On January 17, 2024, Defendant filed a motion to dismiss four of the Bowerman Plaintiffs' claims for failing to allege a conflict between their religious beliefs and the Mandate. ECF No. 6.

On February 7, 2024, the Bowerman Plaintiffs filed an Amended Complaint in response to Defendant's Motion to Dismiss. Am Compl. However, in what Defendant calls a "surprise move," the Amended Complaint added the Hindman Plaintiffs to the Bowerman Plaintiff's suit under the color of Title VII. MTD 3; FAC ¶¶ 24–69; Gibson Decl., at 256–271. In addition, Plaintiffs[3] added new potential theories of recovery for their religious discrimination claims, including "wrongful termination," "disparate treatment," and "pattern or practice discrimination." FAC. 74. Aside from

---

[3] "Plaintiffs" collectively refers to all seventeen named plaintiffs—the six "Bowerman Plaintiffs" and the eleven "Hindman Plaintiffs."

minor stylistic edits, the Amended Complaint did not expand upon any of the facts alleged in either the original Complaint or the Hindman Plaintiffs' complaint filed in state court.

In this motion, Defendant moves the Court to (1) dismiss four of the Bowerman Plaintiffs' claims for failing to allege a religious belief in conflict with the vaccine mandate; (2) dismiss the Hindman Plaintiffs' claims as time-barred by the applicable statute of limitations; and (3) award Defendant costs and attorney fees it incurred defending the Hindman Plaintiffs' state court case.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the Court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the Court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

**DISCUSSION**

I.    **Failure to Allege Religious Beliefs in Conflict with the Mandate**

First, Defendant argues that Plaintiffs Bowerman, Fleischer, Goodrich, and Firebaugh fail to plead prima facie cases of employment discrimination under both Title VII and ORS § 659A.030(1)(a). Title VII makes it is unlawful for an employer to discharge an employee because of their religion.[4] 42 U.S.C. § 2000e-2(a)(1); *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 (9th Cir. 1993). The term "religion" encompasses all aspects of religious practice and belief. 42 U.S.C. § 2000e(j); *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 602 (9th Cir. 2004).

Title VII failure-to-accommodate claims are analyzed under a two-part, burden-shifting framework. *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998). A plaintiff must first plead a prima facie case of religious discrimination. *Id.* If an employee articulates a prima facie case, the burden then shifts to the employer to show that it made good-faith efforts to reasonably accommodate the religious practice, or that it could not accommodate without undue hardship. *Id.*

To assert a prima facie failure-to-accommodate claim under Title VII, a plaintiff must allege that (1) she "had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [she] informed [her] employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to fulfill the job requirement." *Peterson*, 358 F.3d at 606. "According to the EEOC, a bona fide religious belief is one that is sincerely held." *Stephens v. Legacy-GoHealth Urgent Care*, No. 3:23-

---

[4] Claims brought under ORS § 659A.030(1)(a) are analyzed under the same framework as claims brought under Title VII. *Detwiler v. Mid-Columbia Med. Ctr.*, No. 3:22-CV-01306-JR, 2022 WL 19977290 (D. Or. Dec. 20, 2022), *report and recommendation adopted*, No. 3:22-CV-01306-JR, 2023 WL 3687406 (D. Or. May 26, 2023).

CV-00206-SB, 2023 WL 7612395, at *3 (D. Or. Oct. 23, 2023), *report and recommendation adopted sub nom. Stephens v. Legacy Health*, No. 3:23-CV-00206-SB, 2023 WL 7623865 (D. Or. Nov. 14, 2023) (citation and internal quotations omitted) (cleaned-up).

The Supreme Court and the Ninth Circuit have each cautioned against second-guessing the reasonableness of an individual's asserted religious beliefs. *See e.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (noting the Court's "narrow function in this context is to determine whether the line drawn reflects an honest conviction[.]") (cleaned-up); *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023) ("we do not interrogate the reasonableness of [Plaintiff's] beliefs and instead focus our inquiry on whether she has alleged an actual conflict."). However, a court need not take "plaintiffs' conclusory assertions of violations of their religious beliefs at face value." *Bolden-Hardge*, 63 F.4th at 1223. Similarly, a "threadbare reference" to a plaintiff's religious beliefs is insufficient to satisfy the first element of a prima facie case for Title VII discrimination. *Gage v. Mayo Clinic*, No. CV-22-02091-PHX-SMM, 2023 WL 3230986, at *3 (D. Ariz. May 3, 2023) (citing *Iqbal*, 556 U.S. at 678).

Title VII does not protect medical, economic, political, or social preferences. *See Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998); *see also Detwiler*, 2022 WL 19977290, at *4 (finding plaintiff's objection to regular COVID-19 antigen testing to be secular because they believed the tests were carcinogenic and would cause more harm than good); *Ruscitti v. Legacy Health*, No. 3:23-CV-00787-JR, 2023 WL 8007620 (D. Or. Sept. 27, 2023), *report and recommendation adopted*, No. 3:23-CV-00787-JR, 2023 WL 8006269 (D. Or. Nov. 16, 2023) (listing cases and noting "the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion").

**A. Plaintiff Bowerman**

Plaintiff Elizabeth Bowerman was employed by Defendant as a Registered Nurse for approximately fourteen years at St. Charles Medical Center. Am. Compl. ¶ 5. Plaintiff Bowerman asserted in her timely religious exemption that the vaccine goes against her religious beliefs "[a]s a practicing Christian[.]" Id. at ¶ 6; Durr Decl. Ex. 1, at 3. However, Plaintiff Bowerman fails to explain how her Christian beliefs actually conflict with Defendant's employment requirement.

Plaintiff Bowerman offered two objections in her religious exemption request, neither of which satisfy her "fairly minimal" burden at this pleading stage. *Kamrath*, at *4. The first concerns her use of free will to reject the vaccine:

> The Bible says that man has free will. We have the right to decide what medications that we can take. . . . These verses explain that humans are made in the image of God and are given the same mental capacities as our creator. Therefore I am granted free will to think for myself and make my own decisions in this world. In Genesis 3:22 it is explaining [*sic*] how I have the consciousness to choose what is good and bad. With my conscious mind, I have the right to exercise my free will that was granted to me by God. That being said, I am using my free will to reject the vaccine.

Durr Decl. Ex. 1, at 3.

General religious opposition to the Mandate under the principle of free will are exactly the type of "conclusory assertions of violations of his religious beliefs" that the Court need not take "at face value." *Bolden-Hardge*, 63 F.4th at 1223; *see also Kather v. Asante Health Sys.*, No. 1:22-CV-01842-MC, 2023 WL 4865533, at *5 (D. Or. July 28, 2023) (statements related to employer being in no position "to judge the Word of God" and mandate was "blasphemy, satanic, sinful, untruth" failed to allege any religious-based conflict because "vague expressions of sincerely held Christian beliefs alone cannot serve as a blanket excuse for avoiding all unwanted employment

obligations."). The Court does not question Plaintiff Bowerman's belief that her God provides her with "the right to exercise [her] free will." Durr Decl. Ex. 1, at 3. But "free will" opposition to a vaccine mandate is unquestionably a secular objection. The Court observes the precedent set by other judges within this Circuit who have similarly rejected free will arguments as religious objections. *See Nogowski v. St. Charles Med. Ctr.*, No. 6:23-CV-00027-AA, 2023 WL 7003702, at *4 (D. Or. Oct. 24, 2023). Without more, Plaintiff Bowerman has failed to offer any details or specifics of her religious beliefs that would cause a conflict with the vaccine mandate.

Plaintiff Bowerman's second rationale concerning her bodily integrity similarly fails to allege a religious conflict with the COVID-vaccine:

> My final reason is my belief that my body is the temple of the Holy Spirit and that my body is not my own, but God's. It is a God-given responsibility and requirement for me to glorify God in my body by protecting the physical integrity of my body against unclean food, harmful drugs, and injections. [Corinthians] states do you not know that your body is the temple of the Holy Spirit who is in you, [w]hom you have from God and that you are not your own? For you have been bought with a price: therefore glorify god in your body.

Durr Decl. Ex. 1, at 3.

Concerns based on the vaccine's potential to damage a plaintiff's body differ from concerns the Court previously found to be based on a valid, religious conflict with the mandate. *See Bird v. Randol*, No. 6:23-CV-1678-MC, 2024 WL 964244 (D. Or. Mar. 6, 2024) (plaintiff adequately pled a sincerely held religious beliefs when she informed her employer, "'the Holy Spirit has moved on my heart and conscience that I must not accept the COVID vaccine,' and that she would be 'jeopardizing my relationship with God' if she were 'to go against the moving of the Holy Spirit.'" (cleaned up)); *see also Kather*, 2023 WL 4865533, at *4–5 (plaintiffs adequately alleged a religious conflict with an employment duty by alleging "Satan is at work with the whole forceful

COVID-19 mandate" and explaining that receiving the vaccine conflicted with "sincerely held religious belief not to interfere with the function of the human immune system which God created."). Plaintiff Bowerman's explanation is distinguishable from affirmative statements that some religious entity directed someone to not take the vaccine. Her objections instead relate to a general belief that the vaccine is "of no integral good." *Kamrath v. Addictions Recovery Ctr., Inc.*, No. 1:23-CV-01516-MC, 2024 WL 2785385, at *4 (D. Or. May 30, 2024). Again, the Court will follow its own precedent—as well as precedent from numerous other judges within the District of Oregon—and find that concerns about the vaccine's side effects and safety are unprotected medical beliefs rather than protected religious beliefs. *See id.* (compiling cases).

To emphasize, the Court does not "second-guess the reasonableness of a plaintiff's assertion that a requirement conflicts with her religious beliefs[.]" *Bulek v. Kaiser Found. Hosps.*, No. 3:23-CV-01585-MO, 2024 WL 1436134, at *3 (D. Or. Apr. 3, 2024). But a plaintiff "must still say what the conflict is." *Id.* Plaintiff Bowerman's deficiency "boils down to a pleading requirement issue" and, while her pleading burden is "minimal," she must still allege a conflict. *Id.* Because Plaintiff Bowerman fails to plead a sincerely held religious belief that conflicts with an employment duty, her discrimination claims fail. Similarly, because her exemption request confirms she did not provide Defendant with any reason to think the vaccine policy conflicted with any sincerely held religious belief, any amendment to would be futile.

### B. **Plaintiff Fleischer**

Plaintiff Tiffany Fleischer was employed by Defendant as a Registered Nurse for over thirteen years at St. Charles Medical Center. Am. Compl. ¶ 14. Although Plaintiff Fleischer filed

a request for a religious exemption to the vaccine, she failed to include any description of her religious beliefs, or how they conflict with the vaccine mandate. *See* Durr Decl. Ex. 2, at 1.

If fact, Defendant followed up with Plaintiff Fleischer and asked her to resubmit the completed exemption request form or, alternatively, submit a separate attachment with any supplemental information.  Supp. Durr Decl. 7, ECF No. 38. But rather than explain her religious beliefs or how they conflicted with Defendant's vaccine policy, Plaintiff Fleischer blanketly asserted that the vaccine violates her "God-given right to bodily sovereignty." *Id*. As discussed above, objections based on bodily integrity—or in this case, "bodily sovereignty"—are squarely secular considerations. Because Plaintiff Fleischer fails to state a religious belief at any point in her incomplete exemption request, her claims are dismissed with prejudice as well.

### C. **Plaintiff Goodrich**

Plaintiff Tiffany Goodrich had been employed by Defendant for eighteen years prior to her termination, most recently in the Operating Room Department. Am. Compl. ¶ 20. Plaintiff Goodrich "has strong Christian religious beliefs that prevented her from taking the COVID-19 vaccine." *Id.* at ¶ 21. On her religious exemption request, Plaintiff Goodrich included multiple scripture verses to explain why "the vaccine is against [her] personal sincerely-held religious, moral, and ethical beliefs and that the mandate to receive it goes against [her] Constitutional God-given rights." Durr Decl. Ex. 3, at 3.

Most of Plaintiff Goodrich's objections relate to her autonomy over the vaccine:

> God created mankind in His image, to rule over the earth, not to live in fear of the things that come against us in this world.
> ***
> Being made in the image of God and being given the directive to seek wisdom, I am therefore able to find wisdom and discern what is right and wrong, healthy or unhealthy, and therefore make

> decisions for myself without the need to rely on someone else to
> mandate how I should care for my body.
>           \*\*\*
> And in conclusion, my body, my life belong to God. They do NOT
> belong to the Governor, the State, any employer, or any government.
> I am not obligated to give the control of my life over to any of those
> entities. I have chosen Christ as my Saviour [*sic*], I was bought at a
> price and I choose to honor God with my body by using the ability
> to gain wisdom, the ability to discern wisdom, the ability to build up
> my immune system to fight this. Covid-19 illness. It is these beliefs
> in my God, that do not permit me to take this mRNA Covid-19
> vaccine.

Durr Dec. Ex. 3, at 3-4. The Court accepts as true Plaintiff Goodrich's belief that she was made in

the image of her God, but it refuses to "elevate a personal medical judgment to a matter of protected

religion" with a mere citation to her God's name. *See Ruscitti*, 2023 WL 8007620, at \*4 (citation

and quotation omitted). Even when attached to scripture verses, Plaintiff Goodrich's written

statements reflect secular and medical objections to the vaccine rather than religious objections.

    Plaintiff Goodrich's other objections relating to her distrust of the vaccine are similarly

secular:

> God created our bodies, every facet, including our immune systems,
> to fight disease and illness. God designed our bodies to withstand
> any number of illnesses and in this instance my immune system has
> fought off the Covid-19 virus, just as it was designed to do. I do not
> need an mRNA Covid-19 shot to help me fight this illness. I have
> boosted my immunity and my body with self-care, rest, immune
> supporting foods, vitamins, and minerals, all given by God to do just
> this.
>           \*\*\*
> This mRNA vaccine does not honor God, it is a foreign inadequately
> studied treatment, wrought with documented and undocumented
> side effects. I find that the act of taking it, would be in violation of
> treating my body with the respect that God expects of me. Having
> done the research necessary to deem something acceptable to put in
> my body, this treatment has come up lacking and to take it, at this
> point, would be in direct violation of God's command to honor Him
> with my body

Durr Decl. Ex. 3, at 3-4. As discussed above, general religious opposition to the Mandate under the principle of free will are exactly the type of "conclusory assertions of violations of his religious beliefs" that the Court need not take "at face value." *Bolden-Hardge*, 63 F.4th at 1223. Concerns about the vaccine's side effects and preferences to rest, vitamins, and minerals are not religious conflicts to the COVID-19 vaccine, but rather personal, medical, and secular choices. Because Plaintiff Goodrich failed to articulate a conflict between her religious beliefs and the vaccine mandate, either in her exemption request form or in the Amended Complaint, her claims are dismissed as well.

### D. Plaintiff Firebaugh

Plaintiff Matthew Firebaugh was employed by Defendant as a Physician Assistant for approximately three years. Am. Compl. ¶ 22. On his religious exemption form, Plaintiff Firebaugh stated that his "faith in God is central to my daily life." Durr Decl. Ex. 4, at 1. As he explains:

> My faith in God is central to my daily life. My Christian worldview, my faith in God and my deeply held belief that my body is a temple of God, does not allow me in good conscience to receive a Covid-19 vaccine. . . . The CDC VAERS website lists death and severe complications as current known side effects of the Covid-19 vaccine. The Covid-19 vaccine long-term side effects are unknown. I sincerely believe that accepting the Covid-19 vaccine with the known and unknown long term side effects could harm or destroy my body, which I believe is a temple of God and therefore, is against my deeply held belief.

Durr Decl. Ex. 4, at 1.

However, Plaintiff Firebaugh also fails to allege a conflict between his religious beliefs and the COVID-19 vaccine. Like Plaintiffs Bowerman and Goodrich, Plaintiff Firebaugh's objections concern the potential side effects resulting from vaccination. While the Court does not

disregard his concerns about the vaccine, it does not equivocate medical objections and religious objections when evaluating the viability of his religious discrimination claims.

Plaintiff Firebaugh's supplemental answers support the Court's conclusion that his objections are secular:

> I have done my best to always treat my body as a temple of God. Death and severe complications can and have occurred with the Covid-19 vaccine. The long-term side effects of the Covid-19 vaccine are unknown. I can not [*sic*] in good conscious receive this vaccine, due to my deeply held belief, based on the scriptures.

Durr Decl. Ex. 4, at 2.

For the same reasons as Plaintiffs Bowerman and Goodrich, Plaintiff Firebaugh's opposition to the vaccine mandate is clearly based on his medical beliefs rather than his religious beliefs. Because Plaintiff Firebaugh fails to plead a sincerely held religious belief that conflicted with an employment duty, his discrimination claims fail.

## II.    The Hindman Plaintiffs' State Law Claims are Time-Barred

Next, Defendant argues that the Hindman Plaintiffs' state law claims are time-barred by the 90-day limitations period. MTD 12. When exercising supplemental jurisdiction to consider state claims, federal courts turn to state law when addressing statutes of limitations regarding those state claims. *Harvey's Wagon Wheel, Inc. v. Van Blitter*, 959 F.2d 153, 157 (9th Cir. 1992). Under Oregon law, a plaintiff who chooses to file a BOLI complaint "must commence a civil action . . . within 90 days after a 90-day notice is mailed to the complainant[.]" ORS 659A.875(2). Alternatively, if a plaintiff chooses not to file a BOLI complaint, their action "must be commenced not later than five years after the occurrence of the alleged violation." ORS 956A.875(1).

Under Oregon law, the date an action "commences" depends on the time between the filing of the complaint and when a defendant is served with a summons. *See* ORS § 12.020. If a summons is served within 60 days of a complaint's filing, then the action "commences" on the date the complaint was filed. ORS § 12.020(2). But if a summons is served more than 60 days after a complaint is filed, then the action "commences" on the date of service. ORS § 12.020(1).

The Hindman Plaintiffs each exhausted their administrative remedies by filing an administrative charge alleging religious discrimination with BOLI. Between January and February of 2023, BOLI dismissed the Hindman Plaintiffs' complaints and issued the Hindman Plaintiffs right-to-sue letters. *See e.g.* Gibson Decl. at 231–37**.** Those letters provided:

> This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days. after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice.

*Id.*

Pursuant to ORS 659A.875(2), the Hindman Plaintiffs had 90 days to "commence" their lawsuits from when BOLI mailed their individual right-to-sue notices. The 90-day deadline for each Plaintiff to "commence" their lawsuit would fall between April 20, 2023 and May 23, 2023, depending on when BOLI mailed their 90-day notices.

The Hindman Plaintiffs filed their lawsuit on April 20, 2023, but did not serve Defendant until July 20, 2023—92 days later. Pursuant to ORS § 12.020, their lawsuit commenced on the

date of service—well after their respective statute of limitations periods had expired. Accordingly, all eleven Hindman Plaintiffs are time-barred from asserting their state law claims.[5]

The below table summarizes the deadlines for each of the Hindman Plaintiffs:

| Plaintiff | Date of BOLI Notice | Expiration of BOLI 90-Day Period | Commencement Date (per ORS § 12.020) | Days Beyond 90-day Statute of Limitations (per ORS § 659A.875(2)) |
|---|---|---|---|---|
| Hindman | Jan. 20, 2023 | Apr. 20, 2023 | July 20, 2023 | 91 |
| Riley | Jan. 20, 2023 | Apr. 20, 2023 | July 20, 2023 | 91 |
| Terry | Jan. 20, 2023 | Apr. 20, 2023 | July 20, 2023 | 91 |
| Peachy (Payne) | Jan. 25, 2023 | Apr. 25, 2023 | July 20, 2023 | 86 |
| Bird | Feb. 7, 2023 | May 8, 2023 | July 20, 2023 | 73 |
| Karr | Feb. 8, 2023 | May 9, 2023 | July 20, 2023 | 72 |
| Coe (Valberg) | Feb. 8, 2023 | May 9, 2023 | July 20, 2023 | 72 |
| Schriner | Feb. 13, 2023 | May 14, 2023 | July 20, 2023 | 66 |
| Fulton | Feb. 14, 2023 | May 15, 2023 | July 20, 2023 | 65 |
| Narver | Feb. 15, 2023 | May 16, 2023 | July 20, 2023 | 64 |
| Steinhauff | Feb. 22, 2023 | May 23, 2023 | July 20, 2023 | 58 |

Plaintiffs argue that the Court should ignore the 90-day limitation in ORS § 659A.875 and instead use the five-year limitation found in ORS § 659A.875(1)(b). Pls.' Resp. 6. But as the Court recently explained in another case involving a plaintiff who commenced her lawsuit after the statute of limitations had expired, ORS § 659A.875(1) begins with the qualification, "Except as provided in subsection (2) of this section." *Miller v. St. Charles Health Sys., Inc.*, No. 6:23-CV-1844-MC, 2024 WL 2785400, at *3 (D. Or. May 30, 2024). Moreover, courts within this District have repeatedly enforced the 90-day statute of limitations following a BOLI right-to-sue letter. *See e.g. Craven v. Shriners Hosps. for Child.*, 3:22-cv-01619-IM (D. Or. Aug. 15, 2023) (dismissing lawsuit filed 123 days after BOLI 90-day notice was mailed); *Johnson v. Allergy and Asthma Ctr.*

---

[5] The deadlines above reflect the Hindman Plaintiffs' missed deadlines based on when the filed their lawsuit in state court. To the extent that the Hindman Plaintiffs argue that equitable tolling or equitable estoppel should apply, voluntary dismissal of a prior action does not toll statute of limitations. *Lujan v. Ford*, 716 F. App'x 699, 700 (9th Cir. 2018) (citing *Luchini By & Through Luchini v. Harsany*, 98 Or. App. 217 (1989)). Therefore, any actions filed in federal court would be even less timely.

*of S. Oregon*, PC, 23-cv-00761-CL (D. Or. Feb. 2, 2024) (dismissing action because plaintiff served defendant 96 days filing her complaint and 147 days receiving her BOLI notice).

The Court's interpretation of the ORS 659A.875 does not "hinge[] on the technicality of when the summons and Complaint were served[]" as Plaintiffs assert. Pls.' Resp. 6. Rather, the Hindman Plaintiffs explicitly chose to proceed under subsection (2) of ORS 659A.875 by filing a complaint with BOLI. Clearly, the "except[ion]" to the five-year limitation period of ORS 659A.875(1) applies. Because the Hindman Plaintiffs failed to "commence a civil action . . . within 90 days after a 90-day notice is mailed to the complainant," their state law claims are time-barred.

### III.    The Hindman Plaintiffs' Federal Law Claims are Time-Barred

Defendant also moves to dismiss the Hindman Plaintiffs' Title VII claims for failing to timely commence their lawsuit. MTD 16. To file a Title VII religious discrimination claim, a plaintiff must (1) exhaust administrative remedies by filing a charge with the EEOC or an equivalent state agency (such as BOLI), and (2) after exhausting administrative remedies, file a civil action within 90 days. 42 U.S.C. § 2000e-5; *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1106 (9th Cir. 2018). After a charge is initially filed with a state agency that enforces the state's anti-discrimination laws, a Title VII charge must be filed within 300 days after the allegedly unlawful employment practice or 30 days after notice that the agency has terminated its proceedings under state law, whichever is earlier. *Scott*, 888 F.3d at 1106 n.2.

Except for Plaintiff Steinhauff, none of the Hindman Plaintiffs filed administrative charges with the EEOC.[6] Those plaintiffs therefore never exhausted their administrative remedies, and their 300-day window to file a charge with the EEOC has since expired.

Plaintiffs argue that their Title VII claims should survive because of a "single filing" or "piggyback" rule. According to Plaintiffs, the rule allows individuals who have not exhausted their administrative remedies under Title VII or the ADA to piggyback onto another individual who has properly exhausted their remedies. Resp. 9-10. As applied here, Plaintiffs contend that any plaintiff who failed to exhaust their administrative remedies may join an action arising from similarly discriminatory treatment in the same time period as long as *one plaintiff* timely files an EEOC complaint. Resp. 9-10.

The piggyback rule is a judicially created equitable tolling rule based on the observation that it would be duplicative and wasteful for complainants with similar grievances to have to file identical notices of intent to sue with a government agency. *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1202 (9th Cir. 2016). The rule allows an aggrieved employee who fails to file a timely charge with the EEOC to "piggyback" onto the timely charge filed by another plaintiff for purposes of exhausting administrative remedies. *Id.*

Although the Ninth Circuit has never directly applied the piggyback rule outside of the class action context, it has not explicitly ruled out its application to other contexts. *See Martinez v. Victoria Partners*, No. 2:12-CV-502-JAD-VCF, 2014 WL 1268705, at *5 (D. Nev. Mar. 27,

---

[6] Plaintiff Steinhauff received a 90-day right-to-sue notice from the EEOC on May 25, 2023. However, her claims are still untimely. Plaintiff Steinhauff did not file her Title VII claim until February 7, 2024—well outside the 90-day statute of limitations period. Although her complaint in state court may have been timely, she never alleged a Title VII violation, and she voluntarily dismissed her state law claims. As discussed, voluntary dismissal of a prior action does not toll statute of limitations. *Lujan*, 716 F. App'x at 700.

2014) (explaining application of piggyback rule within Ninth Circuit courts). Indeed, in cases where the claims of a non-charging party are "nearly identical" to the claims raised by charging individuals, our sister district courts have allowed those parties to intervene in EEOC actions without exhausting their administrative remedies. *United States Equal Emp. Opportunity Comm'n v. JCFB, Inc.,* No. 19-CV-00552-LHK, 2019 WL 2525203, at *5 (N.D. Cal. June 19, 2019) (citing *E.E.O.C. v. Fry's Elecs., Inc.*, 770 F. Supp. 2d 1168, 1172 (W.D. Wash. 2011)).

But even if the Hindman Plaintiffs' claims were indeed "nearly identical" to properly exhausted claims, Ninth Circuit courts have consistently refused to apply the piggyback rule where a plaintiff has filed an administrative claim and then failed to file a timely federal suit. As the District of Hawaii explained in a case cited by Plaintiffs at oral argument:

> Different policy considerations are at issue where a plaintiff has allowed a suit-filing deadline to lapse after obtaining a right-to-sue letter. Allowing such a deadline to lapse would demonstrate dilatoriness or lack of diligence (or waiver); not allowing "piggybacking" would be consistent with the policy behind enforcing statutory deadlines. Once that filing date has passed, he or she might properly be barred for reasons of repose from "piggybacking" on a more diligent plaintiff.

*U.S. E.E.O.C. v. NCL Am. Inc.*, 504 F. Supp. 2d 1008, 1013 (D. Haw. 2007); *see also Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1022 (N.D. Cal. 2018) (dismissing plaintiff's Title VII claims); *Martinez*, 2014 WL 1268705, at *7 ("the single-filer rule cannot revive claims which are no longer viable at the time of filing.") (internal quotations omitted). The purpose of the piggyback rule is to promote judicial economy, not to provide relief to plaintiffs who failed to meet their applicable statute of limitations. The applicable windows for the Hindman Plaintiffs to bring their Title VII claims has now closed. Accordingly, those claims are dismissed.

## IV.    <u>Motion for Fees Under Rule 41(d)</u>

Finally, Defendant moves to recover its costs and reasonable attorney's fees related to the Hindman Plaintiff's lawsuit filed in Oregon state court. Fed. R. Civ. P. 41(d)(1) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court may order the plaintiff to pay all or part of the costs of that previous action[.]" (cleaned up). An award under Rule 41(d) is appropriate where the movant has failed to present a persuasive explanation for the course of litigation and the nonmovant shows it has incurred needless expenditures as a result. *Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, 619 F. Supp. 3d 1009, 1025 (C.D. Cal. 2022) (citation and quotation omitted). Ninth Circuit courts have awarded costs in cases where, like here, the plaintiff has brought a second identical, or nearly identical, claim and has requested identical, or nearly identical, relief." *Esquivel v. Arau*, 913 F. Supp. 1382, 1387 (C.D. Cal. 1996) (citation omitted). To the extent it seeks costs under Rule 41(d), the Court will grant Defendant's Motion for Fees.

Although Rule 41(d) is silent on attorney's fees, the district court in *Esquivel* concluded as a matter of first impression that attorney's fees may be available as "costs" under Rule 41(d). *Esquivel v. Arau*, 913 F. Supp. 1382 (C.D. Cal. 1996). Recently, the Ninth Circuit held that "costs" under Rule 41(d) do not include attorney's fees as a matter of right, but declined to determine whether bad faith would be sufficient to allow a party to recover attorney's fees as "costs." *Moskowitz v. Am. Sav. Bank, F.S.B.*, 37 F.4th 538, 545–46 (9th Cir. 2022).

The Court finds there is sufficient evidence of bad faith, wanton actions, and forum shopping to justify the imposition of attorney's fees under Rule 41(d). Before the Hindman Plaintiffs voluntarily dismissed their state court action, Defendant filed a substantially identical

motion to dismiss in which, like here, Defendant argued that the Hindman Plaintiffs' claims were time barred by the applicable statute of limitations. *See* Gibson Decl. ¶ 49. At oral argument, Plaintiffs' Counsel stated that he withdrew his state lawsuit and refiled it in federal court because "this circuit has a more established line of precedent regarding the statute of limitations." As Counsel explained, "the reason why we have state and federal forums is because there are benefits and advantages to using different forums."

The Hindman Plaintiffs claims were clearly time barred by the applicable statute of limitations. Every other court—state or federal—would reach the same conclusion. Plaintiffs' Counsel should have also known this. Seeking to delay the inevitable decision in the Hindman Plaintiffs' case, Counsel withdrew their state court action and refiled in federal court. And while the Hindman Plaintiffs' fatal claims are now intermingled within a "dog's breakfast" of the Amended Complaint, the Hindman Plaintiffs' claims are still substantively deficient.

The Court concludes that this case fits within the circumstances where attorney's fees should be included as "costs" under Rule 41(d). Counsel's bad faith in filing the Hindman Plaintiffs' claims and blatant forum shopping are sufficient justifications for the Court's decision. Alternatively, the attorney's fees are justified under the Court's inherent powers. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014) (explaining that courts may award attorney's fees under their inherent powers "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.").

## V.    <u>Separation of Claims</u>

The conglomeration of the seventeen plaintiffs involved in this case is a gross misapplication of joinder under the Federal Rules of Civil Procedure. Rule 20 provides: "[p]ersons

may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action. Fed. R. Civ. P. 20(a)(1). The Ninth Circuit defines the term "transaction or occurrence" to mean "similarity in the factual background of a claim." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).

But even when plaintiffs may be joined under Rule 20, "a district court must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (internal quotation marks omitted). "Courts may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved." *Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493, 496 (D. Ariz. 2012). A determination on the question of joinder of parties lies within the discretion of the district court. *Corley v. Google, Inc.*, 316 F.R.D. 277, 282 (N.D. Cal. 2016) (citation omitted). While misjoinder of parties is not a ground for dismissing an action, the Court may "at any time, on just terms, add or drop a party[, or] sever any claim against a party." Fed. R. Civ. P. 21.

As the Court discussed in an earlier order, it has become a practice of Plaintiffs' Counsel to file multi-party complaints that join separately-situated plaintiffs in an apparent effort to avoid filing fees. *See* Order, ECF No. 23, *Wolfe v. Asante*, Case No. 1:23-cv-01671 (D. Or. May 8, 2024) (compiling cases). Here, even after reviewing the Amended Complaint and holding oral argument, the Court is unsure how Counsel determined which parties and claims are appropriate for joinder. The plaintiffs are employed in different positions, work at different locations, and allege different

claims based on their individual beliefs. At trial, Defendant would likely be unfairly prejudiced by having all remaining plaintiffs testify to their individual discrimination claims. Moreover, the jury would need to keep track and assess the individual claims brought by each individual plaintiff, inevitably creating a high risk of jury confusion.

Pursuant to Rule 21, Plaintiffs Davis and Harris are dismissed without prejudice from this case so they may file new, separate complaints, and pay their own filing fees. The Court will reserve ruling on any motions related to Plaintiff Davis and Plaintiff Harris until they have filed their complaints. At that time, Defendant may move to dismiss any claims alleged in those new complaints.

## **<u>CONCLUSION</u>**

1) The Court GRANTS Defendant's Motion to Dismiss (ECF No. 17) as to the Hindman Plaintiffs. The claims brought by Plaintiffs Hindman, Riley, Terry, Peachy (Payne), Bird, Steinhoff, Karr, Coe (Valberg), Fulton, Shriner, and Narver are DISMISSED with prejudice.

2) The Court GRANTS Defendant's Motion to Dismiss (ECF No. 17) as to the Bowerman Plaintiffs. The claims brought by Plaintiffs Bowerman, Fleischer, Goodrich, and Firebaugh are DISMISSED with prejudice.

3) The Court DISMISSES Plaintiffs Davis and Harris from this action without prejudice. Within 30 days, Plaintiffs Davis and Harris are to file new, separate complaints addressing only the plaintiff's individual claims, and pay a new filing fee or file an application to proceed in forma pauperis.

4) The Court GRANTS Defendant's Motion to the extent it seeks costs under Rule 41(d). Defendant will file supplemental briefing on the relevant costs incurred related to the Hindman Plaintiffs' action filed in Oregon state court. Specifically, Defendant will file supplemental briefing on (1) the reasonableness of any costs or attorney's fees incurred; and (2) if, or to what extent, the legal services previously rendered in defending the state court action have contributed to Defendant's defense in the present case.

IT IS SO ORDERED.

DATED this 1st day of July, 2024.

_____/s/ Michael J. McShane_____
Michael J. McShane
United States District Judge